**Stuart T. GUTTMAN, M.D.,**
**Plaintiff–Appellant,**

v.

**G.T.S. KHALSA, Livingston Parson,**
**and The State of New Mexico,**
**Defendants–Appellees.**

United States of America, Intervenor.

No. 03–2244.

United States Court of Appeals,
Tenth Circuit.

March 17, 2005.

Ian D. McKelvy, Sanders, Bruin, Coll & Worley, P.A., Roswell, NM, for Plaintiff–Appellant.

Timothy S. Hale (Susan R. Johnson with him on the brief), Riley, Shane & Hale, P.A., Albuquerque, NM, for Defendants–Appellees.

R. Alexander Acosta, Assistant Attorney General, David K. Flynn and Kevin Russell, Attorneys, United States Department of Justice, Washington, DC, filed a brief for Intervenor United States of America.

Before LUCERO, ANDERSON, and McCONNELL, Circuit Judges.

LUCERO, Circuit Judge.

Having failed to obtain reinstatement of his license to practice medicine through an action in New Mexico state courts, Dr. Stuart Guttman now seeks relief in federal court. His license to practice medicine was revoked by the New Mexico Board of Medical Examiners ("Board") and that decision was affirmed by the New Mexico Seventh Judicial District Court. His appeals to the New Mexico Court of Appeals and the New Mexico Supreme Court were unavailing. Subsequently, Dr. Guttman filed suit in federal district court against G.T.S. Khalsa, the Board's attorney, Livingston Parsons, the hearing officer, and the state of New Mexico, alleging violations of Title II of the Americans with Disabilities Act ("ADA") and 42 U.S.C. § 1983. On the basis of lack of subject matter jurisdiction under the *Rooker–Feldman* doctrine, the district court granted summary judgment in favor of the defendants. We exercise jurisdiction under 28 U.S.C. § 1291 and **AFFIRM**.

I

Dr. Guttman possessed a medical license issued in New Mexico in 1993 with certain stipulations that were a consequence of his history of depression and post-traumatic stress disorder. Due to his mental illness, Dr. Guttman had practiced under similar restrictions in both Mississippi and Texas. The stipulations to his New Mexico license

were lifted by the Board in May 1995. However, in December 1999 the Impaired Physicians Committee ("Committee") directed Dr. Guttman to appear before it in response to complaints received about his professional conduct. After meeting with the Committee, Guttman received from the Board a Notice of Contemplated Action because of his mental illness and because of allegations that he was dishonest in responding to the Board's inquiries. He further received an Order of Summary Suspension of his medical license. Guttman appeared with counsel before the Board at a three-day hearing to determine whether his license to practice medicine in New Mexico should be revoked. During the hearing, Guttman's counsel proposed a number of restrictions, similar to those under which Guttman had previously practiced in Texas, that would limit Guttman's medical practice to a solo clinic as well as require regular reporting to the Board and posting notice of his restrictions in his medical office. These accommodations were designed to address Guttman's pattern of conduct which made it difficult for fellow physicians and medical staff to work with him.

Following the hearing, the Board made specific findings which included a history of Guttman's past pattern of problems with medical staff and patients in Mississippi, Texas, and New Mexico. The Board also found that Guttman had not given complete and honest responses to its inquiries concerning past problems with his practice in Gallup, New Mexico. As a consequence of these findings and numerous additional findings of abusive and disruptive behavior toward fellow physicians, medical staff, and patients unbecoming of a licensed physician, the Board concluded that further therapeutic treatment would not remove the danger he posed to the public if he continued to practice medicine. Moreover, the Board found that Guttman could not be effectively monitored and

would be unable to practice medicine safely. On February 28, 2001, the Board revoked Guttman's medical license pursuant to its authority under New Mexico's Uniform Licensing Act, N.M. Stat. Ann. § 61-1-1 et seq.

Guttman's appeal of the Board's decision to the Seventh Judicial District Court of New Mexico was denied because the state court found that the decision was based on substantial evidence and was not arbitrary, capricious, or fraudulent. However, the state court refused to consider Guttman's claim under Title II of the ADA because the claim had not been raised specifically before the Board. Although Guttman had proposed particular accommodations, he had not asserted any ADA rights before the Board for their consideration. His appeal before the New Mexico Court of Appeals was denied, as was his petition for certiorari to the New Mexico Supreme Court. Having exhausted all available state remedies, Guttman filed a complaint in federal district court alleging violations of his procedural due process rights under § 1983 and for violations of Title II of the ADA. Because a New Mexico state court rendered a final judgment with regard to Dr. Guttman's appeal from the Board's decision revoking his license, the district court concluded that it lacked subject matter jurisdiction under the *Rooker–Feldman* doctrine to hear Guttman's claims. In addition, the district court concluded that absolute immunity applied with regard to Guttman's § 1983 claim against Khalsa and Parsons and that Eleventh Amendment sovereign immunity applied with regard to his ADA claim against New Mexico. Guttman now presents this appeal.

**II**

We review de novo a district court's dismissal of a complaint for lack of subject matter jurisdiction. *Kenmen*

*Eng'g v. City of Union,* 314 F.3d 468, 473 (10th Cir.1999). Under the doctrine that has arisen from two Supreme Court cases, *Rooker v. Fid. Trust Co.,* 263 U.S. 413, 44 S.Ct. 149, 68 L.Ed. 362 (1923) and *D.C. Court of Appeals v. Feldman,* 460 U.S. 462, 103 S.Ct. 1303, 75 L.Ed.2d 206 (1983), a federal district court does not have subject matter jurisdiction to hear appeals from final judgments of state courts. This doctrine is based upon an inference that follows from 28 U.S.C. § 1257(a) which provides that "[f]inal judgments or decrees rendered by the highest court of a State in which a decision could be had, may be reviewed by the Supreme Court by writ of certiorari." Appellate jurisdiction over state court judgments having been vested in the Supreme Court, it follows that "no court of the United States other than [the Supreme Court] could entertain a proceeding to reverse or modify the judgment" of a state's highest court. *Rooker,* 263 U.S. at 416, 44 S.Ct. 149. In *Rooker,* the harm alleged in federal court was based on the supposed errors made by the Indiana Supreme Court in deciding the plaintiffs' constitutional claims. Because federal district court jurisdiction is "strictly original," the Supreme Court affirmed the district court's dismissal of the case for lack of subject matter jurisdiction. *Id.* To allow a district court to modify the judgment of a state court "would be an exercise of appellate jurisdiction," *id.,* that is implicitly denied to district courts.[1] Thus, under the *Rooker–Feldman* doctrine, a party who loses in state court is barred "from seeking

what in substance would be appellate review of the state judgement in a United States district court, based on the losing party's claim that the state judgment itself violates the loser's federal rights." *Kiowa Indian Tribe v. Hoover,* 150 F.3d 1163, 1169 (10th Cir.1998) (quoting *Johnson v. De Grandy,* 512 U.S. 997, 1005–06, 114 S.Ct. 2647, 129 L.Ed.2d 775 (1994)).

Although federal district court review of issues actually adjudicated by state courts forms the clearest example of a forbidden exercise of appellate jurisdiction, the other half of the *Rooker–Feldman* doctrine forbids a district court from entertaining claims "inextricably intertwined" with a state court judgment. *Feldman,* 460 U.S. at 483, n. 16, 103 S.Ct. 1303. *Feldman* presented the question whether the district court had jurisdiction to review a District of Columbia court's refusal to grant plaintiffs a waiver to take the District of Columbia bar exam. *Id.* at 482, 103 S.Ct. 1303. In response, the Supreme Court reasoned that "if the constitutional claims presented to a United States district court are inextricably intertwined with the state court's denial in a judicial proceeding of a particular plaintiff's ... [state court claims], then the district court is in essence being called upon to review the state-court decision." *Id.* at 483, n. 16, 103 S.Ct. 1303. If the actual claim brought in federal court has not been adjudicated in a prior state court proceeding, then a district court must determine whether "in essence" a party seeks review of the state-court judgment.[2] *Id.*

---

1. This rule is not absolute, as district courts may properly exercise what is in effect appellate jurisdiction over collateral attacks to state court judgments pursuant to 28 U.S.C. § 2254.

2. Unlike a defense of res judicata (or "claim preclusion"), which requires federal courts to give preclusive effect to state court judgments as determined by state law pursuant to the full faith and credit statute, 28 U.S.C. § 1738,

*Rooker–Feldman* is a matter of federal law and operates as a subject-matter jurisdictional bar that may be raised at any time. *See GASH Assocs. v. Rosemont,* 995 F.2d 726, 728 (7th Cir.1993) ("The *Rooker–Feldman* doctrine ... has nothing to do with § 1738. It rests on the principle that district courts have only original jurisdiction ...."); *see generally, Kremer v. Chem. Constr. Corp.,* 456 U.S. 461, 466–67, 102 S.Ct. 1883, 72 L.Ed.2d 262

Because Guttman first raised his claims in state court, we look, under *Rooker–Feldman*, to whether he essentially seeks to bring a forbidden de facto appeal. *See, e.g., Facio v. Jones,* 929 F.2d 541, 543 (10th Cir.1991) (holding that plaintiff's request for declaratory relief is "inextricably intertwined" with the underlying state court judgment against him). To determine whether *Rooker–Feldman* deprives a federal court of jurisdiction, we ask "whether the state-court judgment caused, actually and proximately, the injury for which the federal-court plaintiff seeks redress." *Kenmen Eng'g,* 314 F.3d at 476. That is, we seek to determine "whether the injury alleged by the federal plaintiff resulted from the state court judgment itself or is distinct from that judgment." *Id.* (citing *Garry v. Geils,* 82 F.3d 1362, 1365 (7th Cir.1996)).

■ In the present case, Guttman alleges that his injury results from the Board's failure to provide accommodations for him pursuant to the ADA. Noting that he presented the Board with proposed restrictions to his license to practice medicine, he argues that a violation of the ADA did not occur until the Board rendered its decision and refused to provide him any accommodations for his mental illness. Thus, at first it would appear that he does not allege injury from the state-court judgment, and that because he "asserts as a legal wrong an allegedly illegal act or omission by an adverse party, *Rooker–Feldman* does not bar jurisdiction." *Noel v. Hall,* 341 F.3d 1148, 1164 (9th Cir.2003). Indeed, the Supreme Court's reasoning in *Pennzoil Co. v. Texaco, Inc.,* 481 U.S. 1, 107 S.Ct. 1519, 95 L.Ed.2d 1 (1987), indicates that a claim is not inextricably intertwined with a prior state court judgment when the *purpose* of the federal action is

"separable from and collateral to the merits of the state-court judgment." *Id.* at 21 (Brennan, J., concurring).

Our inquiry then requires us to ask whether the purpose of Guttman's ADA claim is separable from and collateral to the merits of the state-court judgment affirming the Board's revocation of his medical license. In order to facilitate this inquiry into the federal suit's purpose, we have held that when determining whether the federal plaintiff asserts a legal injury by an adverse party or by a state-court judgment, we must look to the *relief* sought, not simply to the issues raised. *Kenmen Eng'g,* 314 F.3d at 476; *Crutchfield v. Countrywide Home Loans & Mortg. Elec. Registration Sys.,* 389 F.3d 1144, 1148 (10th Cir.2004) (noting that although "a litigant may be able to make a federal claim appear unrelated to a state court judgment through artful pleading, the requested relief can quickly reveal whether *Rooker–Feldman* applies.").

We recognize that the state court's refusal to hear Guttman's ADA claims on the basis that they were not properly preserved for appeal complicates the issue before us. Guttman argues that his ADA claims have never been "actually decided," and are therefore separate from the state-court judgment affirming his license revocation. We are not deprived of subject matter jurisdiction to hear Guttman's ADA claims, however, merely because they were first raised in state court. It is state-court judgments that trigger the jurisdictional bar of *Rooker–Feldman,* not state-court claims. In the instant case, the state court refused to exercise jurisdiction over the ADA claim, and hence did not decide it on the merits. *See Pittsburg County Rural Water Dist. No. 7 v. City of McAlester,* 358

(1982) (distinguishing res judicata ("claim preclusion") from collateral estoppel ("issue preclusion")); 18 Charles Alan Wright et al.,

Federal Practice & Procedure § 4402 (2d ed.2002).

F.3d 694, 707 (10th Cir.2004) (concluding that *Rooker–Feldman* does not bar a federal suit where a state court did not decide the federal claim on the merits); *Whiteford v. Reed*, 155 F.3d 671, 674 (3d Cir. 1998) (holding that where a state action does not reach the merits of a plaintiff's claims, *Rooker–Feldman* does not deprive the federal court of jurisdiction). Instead, we are deprived of jurisdiction over Guttman's ADA and § 1983 claims because they are but alternate routes to achieving his desired relief—judicial reinstatement of his medical license.

As Appellees argue before us, the state court found that the Board's decision was supported by substantial evidence reflected in the record and was not fraudulent, arbitrary, or capricious. That evidence includes the Board's finding that Dr. Guttman engaged in dishonesty and professional misconduct, which are grounds for revocation of his license separate from the Board's finding that the public could not be protected adequately from his mental illness through accommodations to his license. Therefore, because a New Mexico state court judgment affirmed the Board's decision as based on substantial evidence, we now lack jurisdiction to hear Dr. Guttman's ADA claim which is "inextricably intertwined" with the state court's merits decision. Through his ADA claim, Guttman would have us disrupt or undo the New Mexico state court decision affirming his license revocation, needlessly duplicate judicial proceedings, and ignore congressional limitation of our judicial power under § 1257. Under *Rooker–Feldman*, we are jurisdictionally barred from doing so.

Guttman also argues that because New Mexico state courts refused jurisdiction over his ADA claim, he has been deprived of a full and fair opportunity to litigate this claim. Even if he has suffered such a deprivation, our Circuit has held that *Rooker–Feldman* "bars any suit that seeks to disrupt or 'undo' a prior state-court judgment, regardless of whether the state-court proceeding afforded the federal-court plaintiff a full and fair opportunity to litigate her claims." *Kenmen Eng'g.*, 314 F.3d at 478. Other circuits have concluded, however, that where a litigant has not had a fair opportunity to *raise* a federal claim in state court proceedings, the *Rooker–Feldman* doctrine does not bar a subsequent federal action. *See e.g.*, *Simes v. Huckabee*, 354 F.3d 823, 827 (8th Cir.2004) ("the inextricably intertwined analysis may be inapplicable where federal plaintiffs have not been given a reasonable opportunity to raise their federal claims in the state proceedings."); *Long v. Shorebank Dev. Corp.*, 182 F.3d 548, 558 (7th Cir. 1999) ("an issue cannot be inextricably intertwined with a state court judgment if the plaintiff did not have a reasonable opportunity to raise the issue in state court proceedings."); *Moccio v. N.Y. State Office of Court Admin.*, 95 F.3d 195, 198–99 (2d Cir.1996) (noting that if "the plaintiff did not have an opportunity to present the claims in [state court] proceedings, the claims are not ... barred by *Rooker–Feldman*."). In the present case, Guttman was not deprived of an opportunity to raise his ADA claim in state court. To the extent that Guttman's ADA claim was raised in state court and is inextricably intertwined with the state court's judgment, regardless of whether Guttman had a full opportunity to litigate the claim, *Rooker–Feldman* bars the action.

### III

Even if the *Rooker–Feldman* doctrine did not bar his action, the district court found that Eleventh–Amendment immunity applied to Guttman's claim under Title II of the ADA against New Mexico and that absolute immunity applied to his § 1983 claims against defendants Khalsa and Parsons. Because we conclude that

*Rooker–Feldman* deprives the district court of subject matter jurisdiction to hear Guttman's claims, we need not reach the merits of defendants' immunity defenses.

We hold that district court properly determined that it lacked subject matter jurisdiction under *Rooker–Feldman* and **AFFIRM**.