**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**April 19, 2006**

**Elisabeth A. Shumaker**
**Clerk of Court**

PUBLISH

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

---

STUART T. GUTTMAN, M.D.,

      Plaintiff - Appellant,

v.

G.T.S. KHALSA, LIVINGSTON
PARSONS, and THE STATE OF
NEW MEXICO,

      Defendants - Appellees.

------------------------

UNITED STATES OF AMERICA,

      Intervenor.

No. 03-2244

---

**Appeal from the United States District Court**
**for the District of New Mexico**
**(D.C. No. CIV-03-463)**

---

Ian D. McKelvy, Sanders, Bruin, Coll & Worley, P.A., Roswell, New Mexico, for
Plaintiff–Appellant.

Timothy S. Hale (Susan R. Johnson with him on the brief), Riley, Shane & Hale,
P.A., Albuquerque, New Mexico, for Defendants–Appellees.

---

Before **LUCERO**, **ANDERSON**, and **McCONNELL**, Circuit Judges.

**LUCERO**, Circuit Judge.

Stuart Guttman appeals the dismissal on summary judgment of his claims that G.T.S. Khalsa, Livingston Parsons, and the State of New Mexico violated Title II of the Americans with Disabilities Act ("ADA") and 42 U.S.C. § 1983 by revoking his medical license in a flawed state administrative proceeding. The district court dismissed his claim for lack of subject matter jurisdiction under the Rooker-Feldman doctrine. In the alternative, the district court held that Khalsa and Parsons were protected from suit by absolute immunity and that the state was entitled to sovereign immunity. On appeal, we affirmed the district court's dismissal based on a lack of subject matter jurisdiction. Guttman v. Khalsa, 401 F.3d 1170 (10th Cir. 2005). That decision was vacated by the Supreme Court in light of its decision in Exxon Mobil Corp. v. Saudi Basic Indus. Corp., 544 U.S. 280, 125 S. Ct. 1517 (2005), and remanded to this court. Guttman v. Khalsa, 126 S. Ct. 321 (2005).

Under Exxon Mobil, it is clear that the district court does have subject matter jurisdiction to hear the case because, although Guttman filed his claim after it was resolved by a New Mexico court, it was filed before the end of the state courts' appeal process. Thus, we must review the district court's decision with respect to absolute and sovereign immunity. We **AFFIRM** the district court's determination that summary judgment was proper as to the claims against

2

Khalsa and Parsons because they are entitled to absolute immunity. However, as a result of two recent Supreme Court decisions – <u>Tennessee v. Lane</u>, 541 U.S. 509 (2004), and <u>United States v. Georgia</u>, 126 S. Ct. 877 (2006) – the district court must reconsider the Title II claim against New Mexico. It must first determine whether Guttman stated a claim that New Mexico violated Title II of the ADA; if so, it must then determine whether Title II abrogated sovereign immunity as applied to the class of conduct at issue in this case. As such, we **REVERSE** the grant of summary judgment to the State of New Mexico and **REMAND** the case for proceedings consistent with this opinion.

## I

The facts of this case were discussed at length in our original opinion. <u>See</u> <u>Guttman v. Khalsa</u>, 401 F.3d 1170, 1170-72 (10th Cir. 2005) ("<u>Guttman II</u>").[1] Guttman is a doctor who formerly was licensed to practice in New Mexico. He also suffers from depression and post-traumatic stress disorder. In December 1999, the Impaired Physicians Committee ("Committee") of the New Mexico Board of Medical Examiners ("the Board") directed Guttman to appear before it

---

[1] For ease of reference, this opinion will refer to the district court opinion, <u>Guttman v. Khalsa</u>, 320 F. Supp. 2d 1164 (D. N.M. 2003), as "<u>Guttman I</u>." It will refer to the previous panel opinion, <u>Guttman v. Khalsa</u>, 401 F.3d 1170 (10th Cir. 2005), as "<u>Guttman II</u>." The Supreme Court's decision to vacate and remand the panel decision, <u>Guttman v. Khalsa</u>, 126 S. Ct. 321 (2005), will be referred to as "<u>Guttman III</u>."

3

in response to a series of complaints about Guttman's professional conduct. The Committee issued a "Notice of Contemplated Action and an Order of Summary Suspension" of his medical license because of Guttman's mental illness and allegations that he lied to the committee. The Board held a three-day hearing in front of Livingston Parsons, with G.T.S. Khalsa serving as the Administrative Prosecutor. The Board then revoked Guttman's medical license pursuant to its authority under N.M. Stat. Ann. § 61-1-1, et seq.

Guttman appealed the Board's decision to the Seventh Judicial District Court of New Mexico. On appeal, Guttman also claimed that the Board's decision violated Title II of the ADA. The state court denied the appeal because the Board's decision was based on substantial evidence and was not arbitrary, capricious, or fraudulent. It refused to consider Guttman's ADA claim because he did not raise it before the Board. He appealed this decision to the New Mexico Court of Appeals, but his appeal was denied on April 10, 2003. Guttman filed a petition for certiorari to the New Mexico Supreme Court, but on April 17, 2003, before the New Mexico Supreme Court acted, he filed this claim against Parsons, Khalsa and the state of New Mexico in federal district court, alleging violations of Title II of the ADA and violations of his procedural due process rights under § 1983. The New Mexico Supreme Court denied his petition for certiorari on May 16, 2003.

The defendants moved for summary judgment and the district court dismissed the case for lack of subject-matter jurisdiction under the Rooker-Feldman doctrine. Guttman I, 320 F.Supp.2d at 1169. In the alternative, the district court held that Khalsa and Parsons were protected against suit by absolute immunity and that Guttman could not raise a claim against the state of New Mexico under Title II of the ADA because, under this court's decision in Thompson v. Colorado, 278 F.3d 1020, 1034 (10th Cir. 2001), Title II of the ADA did not abrogate the state's sovereign immunity. Id. at 1169-71. We affirmed that decision, holding that the court lacked subject-matter jurisdiction because of the Rooker-Feldman doctrine. Guttman II, 401 F.3d at 1176. Because we dismissed for lack of subject matter jurisdiction, we did not address the district court's alternate holdings with respect to absolute and sovereign immunity. The Supreme Court vacated our decision and remanded in light of its decision in Exxon Mobil. Guttman III, 126 S. Ct. 321 (2005).

## II

Guttman claims that the district court erred in dismissing the case for lack of subject matter jurisdiction under the Rooker-Feldman doctrine because he filed his federal complaint before his case in state court was final. Under Exxon Mobil, the Rooker-Feldman doctrine only applies to cases brought "after the state proceedings have ended." 125 S. Ct. at 1526. State proceedings had not ended

5

when Guttman filed his federal court claim. As such, the Rooker-Feldman doctrine does not apply and the district court did have subject matter jurisdiction.

We review de novo a district court's dismissal of a complaint for lack of subject matter jurisdiction. Kiowa Indian Tribe of Okla. v Hoover, 150 F.3d 1163, 1165 (10th Cir. 1998). By statute, "[f]inal judgments or decrees rendered by the highest court of a State in which a decision could be had, may be reviewed by the Supreme Court by writ of certiorari." 28 U.S.C. § 1257(a). In Rooker v. Fid. Trust Co., 263 U.S. 413 (1923), the Supreme Court interpreted § 1257(a) to mean that only the Supreme Court can hear appeals from final judgments of state courts. Therefore, a federal district court does not have subject matter jurisdiction to review a case that was resolved by state courts. In D.C. Court of Appeals v. Feldman, 460 U.S. 462 (1983), the Court held that challenges to a state court judgment are barred even if the claim forming the basis of the challenge was not raised in the state proceedings. "[I]f the constitutional claims presented to a United States District Court are inextricably intertwined with the state court's denial in a judicial proceeding of a particular plaintiff's . . . [state court claims], then the district court is in essence being called upon to review the state-court decision." Id. at 483, n.16. See Bolden v. City of Topeka, __ F.3d __, 2006 U.S. App. LEXIS 6917, 2006 WL 701151, at *8 (10th Cir. Mar. 21, 2006). (discussing the scope of the Feldman decision). Together, these two cases created

6

what is commonly known as the Rooker-Feldman doctrine.

After its cryptic decision in Feldman, the Supreme Court did not explain the scope of the Rooker-Feldman doctrine until it decided Exxon Mobil twenty-three years later. Exxon Mobil, 125 S. Ct. at 1523. In the absence of such guidance, this court, like others around the country, adopted a rule that the Rooker-Feldman doctrine applied to state court decisions that were not final: "Under Rooker-Feldman, lower federal courts possess no power whatever to sit in direct review of state court decisions. This prohibition extends to all state-court decisions – final or otherwise." Kenman Eng'g v. City of Union, 314 F.3d 468, 473 (10th Cir. 2002) (citations and quotation marks omitted). See also Facio v. Jones, 929 F.2d 541, 542-43 (10th Cir. 1991); Anderson v. Colo., 793 F.2d 262, 263-64 (10th Cir. 1986).

Exxon Mobil reverses this holding from our decision in Kenman. In Exxon Mobil, the Supreme Court reversed a Third Circuit decision holding that a federal court lacked subject matter jurisdiction when a state and federal suit were filed concurrently and the state court ruled first. Exxon Mobil, 125 S. Ct. at 1525-26. In so doing, the Court reduced the scope of the Rooker-Feldman doctrine to the narrow set of cases out of which it was born. "The Rooker-Feldman doctrine . . . is confined to cases of the kind from which the doctrine acquired its name: cases brought by state-court losers complaining of injuries caused by state-court

7

judgments rendered before the district court proceedings commenced and inviting district court review and rejection of those judgments." Id. at 1522-23. The Court explained the scope of its holding by stating:

> Rooker and Feldman exhibit the limited circumstances in which this Court's appellate jurisdiction over state-court judgments, 28 U.S.C. § 1257, precludes a United States district court from exercising subject-matter jurisdiction in an action it would otherwise be empowered to adjudicate under a congressional grant of authority . . . . In both cases, the losing party in state court filed suit in federal court after the state proceedings ended, complaining of an injury caused by the state-court judgment and seeking review and rejection of that judgment.

Id. at 1526 (emphasis added). Under Exxon Mobil, Rooker-Feldman applies only to suits filed after state proceedings are final.[2] See Federacion, 410 F.3d at 24-25 (holding that, after Exxon Mobil, the Rooker-Feldman doctrine only applies to final state court decisions); Hoblock v. Albany County Board of Elections, 422 F.3d 77, 89 (2d Cir. 2005) (same); Dornheim v. Sholes, 430 F.3d 919, 924 (8th Cir. 2005) (same); Mothershed v. Justices of the Supreme Court, 410 F.3d 602,

---

[2] The First Circuit helpfully explained the situations where a judgment would be considered final for Rooker-Feldman purposes: (1) "when the highest state court in which review is available has affirmed the judgment below and nothing is left to be resolved"; (2) "if the state action has reached a point where neither party seeks further action"; or (3) "if the state court proceedings have finally resolved all the federal questions in the litigation, but state law or purely factual questions (whether great or small) remain to be litigated." Federacion de Maestros de Puerto Rico v. Junta de Relaciones del Trabajo de Puerto Rico, 410 F.3d 17, 24 (1st Cir. 2005).

604 n.1 (9th Cir. 2005) (same).

In this case, Guttman filed his federal suit while his petition for certiorari to the New Mexico Supreme Court was pending. His state suit was not final. As such, the Rooker-Feldman doctrine does not bar his federal suit and the district court does have subject matter jurisdiction to hear the case.

### III

Guttman also appeals the district court's alternate reasons for dismissing his case on summary judgment: absolute immunity for Parsons and Khalsa and sovereign immunity for the State of New Mexico. The district court properly granted absolute immunity for Parsons and Khalsa because they were serving in quasi-judicial and prosecutorial roles at the New Mexico Board of Medical Examiners' hearing. However, the Supreme Court's decisions in Tennessee v. Lane and United States v. Georgia require that we reverse the district court's ruling that the State of New Mexico is protected by sovereign immunity. Georgia lays out specific procedures that courts must use to determine whether Title II of the ADA abrogates a state's sovereign immunity. We therefore remand the case to the district court to determine whether Guttman has stated a claim under Title II and, if so, whether Title II validly abrogates state sovereign immunity as applied to the class of conduct at issue in this case.

### A

9

When the Board held its hearing to determine whether to revoke Guttman's medical license, Parsons served as the hearing officer and Khalsa served as the administrative prosecutor. Guttman claims that both violated Title II of the ADA and § 1983. He further claims that the district court erred in granting summary judgment to each of them on the ground that they were protected by absolute immunity. Guttman argues that Parsons does not deserve absolute immunity as a result of performing a quasi-judicial function because he should have recused himself. Khalsa, he argues, was not engaged in a prosecutorial activity when he violated Guttman's due process rights and hence is not protected by absolute immunity. Guttman's arguments have no merit. Parsons and Khalsa were acting in their quasi-judicial and prosecutorial functions and are hence entitled to absolute immunity from this suit.

Using the standard established by Fed. R. Civ. P 56(c), we review the district court's grant of summary judgment on the basis of prosecutorial and quasi-judicial immunity de novo. Pfeiffer v. Hartford Fire Ins. Co., 929 F.2d 1484, 1489 (10th Cir. 1991). "This standard requires us to affirm the district court if, upon viewing the factual record in the light most favorable to the party opposing summary judgment, we conclude that 'there is no genuine issue as to any material fact and . . . the moving party is entitled to judgment as a matter of law.'" (quoting Fed. R. Civ. P. 56(c)). Absolute immunity bars suits for money

10

damages for acts made in the exercise of prosecutorial or judicial discretion. Mireles v. Waco, 502 U.S. 9, 13 (1991)

Parsons is clearly protected by absolute immunity. The Supreme Court has long recognized that officials in administrative hearings can claim the absolute immunity that flows to judicial officers if they are acting in a quasi-judicial fashion. Butz v. Economou, 438 U.S. 478, 514 (1978). For an official at an administrative hearing to be protected by absolute immunity "(a) the officials' functions must be similar to those involved in the judicial process, (b) the officials' actions must be likely to result in damages lawsuits by disappointed parties, and (c) there must exist sufficient safeguards in the regulatory framework to control unconstitutional conduct." Horwitz v. State Bd. of Med. Examiners, 822 F.2d 1508, 1513 (10th Cir. 1987).

In Horwitz, a plaintiff challenged a decision made by the Colorado State Medical Examiners Board in Colorado. Id. at 1510. We held that the board's hearing officers served a quasi-judicial function and, hence, that they were protected by absolute immunity from a suit alleging that one of their decisions violated federal law. Id. This case is nearly identical to the case at bar. Guttman does not argue that Parsons' functions were dissimilar to those involved in the judicial process, that his actions were unlikely to result in damages lawsuits by disappointed parties, or that the regulatory framework governing the New

11

Mexico Board of Medical Examiners is somehow infirm.

Instead, Guttman attempts to distinguish this case from Horowitz by alleging that Parsons was biased because he had supervised Guttman during his probationary period.[3] The Supreme Court has established that an accusation of a conflict of interest does not trump a claim of absolute immunity. "[J]udicial immunity is not overcome by allegations of bad faith or malice . . . ." Mireles, 502 U.S. at 12. Only accusations that a judge was not acting in his judicial capacity or that he acted in the complete absence of all jurisdiction can overcome absolute immunity. Id. Guttman does not allege that the Board or Parsons was without jurisdiction – he merely claims that Parsons should have recused himself. Parsons is hence entitled to absolute immunity in this suit.

Khalsa is equally entitled to absolute immunity. Guttman alleges that Khalsa neglected to place certain documents into evidence before the Board and failed to disclose a file created by one of Guttman's employers until after Guttman had met with the committee. Further, he claims that Khalsa imposed an impossible deadline for disputing the complaints filed by patients against him and threatened to file a revocation action unless he responded within the deadline. Finally, he complains that Khalsa improperly argued that Parsons did not need to

---

[3] Guttman raised the issue of their previous contacts during the hearing, but Parsons declined to recuse himself.

12

recuse himself. According to Guttman, these actions were investigatory or administrative in nature and hence were not protected by absolute immunity. In Imbler v. Pachtman, 424 U.S. 409, 431 (1976), the Supreme Court ruled that a prosecutor is entitled to absolutely immunity from a Section 1983 suit for damages based on his "initiating a prosecution and . . . presenting the State's case." All of Guttman's allegations fall within Imbler's ambit. In a footnote, the Court explicitly stated that prosecutors are protected by absolute immunity from a claim that they failed to turn over exculpatory evidence. Id. at 431-32 n.34 (explaining that the "deliberate withholding of exculpatory information" although reprehensible, is protected by absolute immunity). Khalsa's other alleged violations of Guttman's rights under the Due Process Clause and Title II – offering opinions to the hearing officer and negotiating with Khalsa over deadlines – were part of his prosecutorial duties. We have ruled that Imbler applies to attorneys appearing before a state board of medical examiners. Pfeiffer v. Hartford Fire Ins. Co., 929 F.2d at 1489 (applying Imbler to prosecutors appearing before the Colorado State Board of Medical Examiners). Khalsa's actions were clearly within his role as an administrative prosecutor. The district court properly determined that he is entitled to absolute immunity.

**B**

The district court dismissed Guttman's claim against the state of New

13

Mexico because the state was protected by sovereign immunity. At the time, this was clearly the proper result. Our decision in Thompson v. Colorado, 278 F.3d at 1034, held that Title II of the ADA did not abrogate sovereign immunity under any context. Thompson, however, is no longer good law. Under the Supreme Court's decisions in Lane and Georgia, Title II validly abrogates sovereign immunity as to (1) actual violations of the Constitution and (2) at least some classes of conduct that do not facially violate the Constitution but are prohibited to "prevent and deter unconstitutional conduct." Lane, 541 U.S. at 518.

In Lane, 541 U.S. 509 (2004), the Supreme Court held that, as applied to a case alleging discriminatory access to the courts, Title II abrogated sovereign immunity because it was a valid use of the powers granted to Congress under § 5 of the Fourteenth Amendment.[4] Id. at 533-34. The Court held that, although the

_____

[4] To abrogate sovereign immunity, Congress must unequivocally express its intent to abrogate and it must act pursuant to a valid grant of constitutional authority. Lane, 541 U.S. at 517. Congress clearly expressed its intent to abrogate sovereign immunity when it passed the ADA. Id. The key question is whether it did so pursuant to a valid grant of constitutional authority. Congress cannot abrogate sovereign immunity through its power under the Interstate or Indian Commerce Clauses. Seminole Tribe of Fla. v. Florida, 517 U.S. 44, 72-73 (1996). It can, however, abrogate sovereign immunity through its enforcement power under § 5 of the Fourteenth Amendment. "Congress can abrogate a State's sovereign immunity when it does so pursuant to a valid exercise of its power under § 5 of the Fourteenth Amendment to enforce the substantive guarantees of that Amendment." Lane, 541 U.S. at 518. Congress's power under § 5 also "includes 'the authority both to remedy and to deter violation of rights guaranteed [by the Fourteenth Amendment] by prohibiting a somewhat broader swath of
(continued...)

14

conduct that was the basis for the suit was not a direct violation of the Constitution, Title II, in the context of the suit, was valid prophylactic legislation that prevents and deters unconstitutional conduct. Id. at 518. The Court, however, declined to address whether Title II abrogated sovereign immunity in other contexts where parties allege violations of the law that are not independent constitutional violations.

In Georgia, 126 S. Ct. at 877, the Court explained the procedure by which courts should address Title II cases brought against states. The plaintiff in Georgia, a state prisoner, alleged that prison officials violated both Title II and the Eighth Amendment. Id. at 880-81. It is well-settled that Congress can abrogate sovereign immunity as to actual violations of constitutional rights. However, it was not clear from the pleadings whether the plaintiffs alleged that prison officials engaged in conduct that violated Title II but that was not also a violation of the Eighth Amendment. Id. As such, the Court remanded the case

---

[4](...continued)
conduct, including that which is not itself forbidden by the Amendment's text.'" Id. (quoting Kimel v. Florida Bd. of Regents, 528 U.S. 62, 81 (2000)). As such, Congress can pass prophylactic legislation that proscribes constitutional conduct in order to prevent and deter unconstitutional conduct. Id. In order for such legislation to be proper under § 5, it must, however, exhibit "a congruence and proportionality between the injury to be prevented or remedied and the means adopted to that end." City of Boerne v. Flores, 521 U.S. 507, 520 (1997). In Lane, the Court found Title II, as applied to the specific challenge alleged, passed this test. 541 U.S. at 533.

15

to allow amended pleadings to permit the plaintiffs to make clear whether they allege ADA violations beyond the direct violations of the Eighth Amendment. In doing so, the Court laid out a procedural roadmap explaining how Title II claims against a state should proceed:

> Once Goodman's complaint is amended, the lower courts will be best situated to determine in the first instance, on a claim-by-claim basis, (1) which aspects of the State's alleged conduct violated Title II; (2) to what extent such misconduct also violated the Fourteenth Amendment; and (3) insofar as such misconduct violated Title II but did not violate the Fourteenth Amendment, whether Congress's purported abrogation of sovereign immunity as to that class of conduct is nevertheless valid.

Id..

Because of our holding in Thompson, the district court did not address whether the plaintiff stated a claim that New Mexico violated Title II of the ADA. Under the Supreme Court's decision in Georgia, we must remand the case to the district court so that it can determine whether Guttman properly alleged violations of Title II. When doing so, the district court also will be able to determine whether Guttman's claims are otherwise barred because they are precluded by res judicata or collateral estoppel.

If the district court decides that Guttman did state a valid claim under Title II, it must then determine whether Congress abrogated sovereign immunity as applied to the class of conduct at issue in this case. Georgia, 126 S. Ct. at 880-81. If his Title II claims against New Mexico also constitute an independent

16

constitutional violation, Guttman may proceed with those claims against the state. Id. If Guttman has stated a valid Title II claim that is not also an independent constitutional violation, the district court must conduct the Lane analysis to determine whether Title II abrogated sovereign immunity for an as applied challenge.

The procedural rule laid out in Georgia is wise. Before a court can determine whether Title II abrogated sovereign immunity as applied to a specific suit, it must know the specifics of the claim at issue. Otherwise, the court would be engaged in a guessing game about what class of conduct is implicated by the complaint. Further, a court that tried to determine whether Title II abrogated sovereign immunity before it determined that a plaintiff actually alleged a Title II violation would risk issuing an advisory opinion.

As such, we reverse the district court's grant of summary judgment to the State of New Mexico and remand for hearings to determine whether Guttman alleged a violation of Title II. If the district court determines that there was such an allegation, and that the allegation is not precluded by res judicata or collateral estoppel, it should then determine whether, by passing Title II, Congress abrogated sovereign immunity as applied to that challenge.

**IV**

We **AFFIRM** the district court's determination that both Parsons and

17

Khalsa are protected by absolute immunity. However, we **REVERSE** the district court's determination that New Mexico is protected against all suits under Title II of the ADA by sovereign immunity and **REMAND** for hearings consistent with this opinion.