FILED
United States Court of Appeals
Tenth Circuit

July 14, 2011

Elisabeth A. Shumaker
Clerk of Court

PUBLISH

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

---

SCOTT GARRETT and PAMELA
JANE GARRETT, Trustees of the
Scott Garrett and Pamela Garrett
Family Trust dated June 14, 1999;
SCOTT GARRETT, individually;
PAMELA GARRETT, individually,

        Plaintiffs-Appellees,

WHEELER PEAK CONSULTING,
INC.,

        Plaintiff,

and

WELLS FARGO BANK NEW
MEXICO, N.A., successor to Wells
Fargo Bank New Mexico; WELLS
FARGO & COMPANY, a Delaware
corporation; GARRETT CAPITAL,
LLC, a New Mexico Limited Liability
Company; CATHERINE F. DAVIS,
individually; KENNETH A. HUNT,
individually; HUNT & DAVIS, P.C., a
New Mexico professional corporation;

        Defendants-Appellees,

v.

DANIEL W. COOK, individually and
as a member of the Board of Directors
of Trenchless Infrastructure
Technologies, Inc.,

No. 10-2214

Defendant-Appellant,

and

TRENCHLESS INFRASTRUCTURE TECHNOLOGIES INC., f/k/a Hydroscope Group Inc., n/k/a Hydroscope Integrated Technologies, Inc., A Nevada Corporation; YOLANDA T. COOK, individually; DR. WILLIAM F. HARTMAN, as a member of the Board of Directors of Trenchless Infrastructure Technologies, Inc.; ALBERT T. USSERY, as a member of the Board of Directors of Trenchless Infrastructure Technologies, Inc.; MICHAEL T. MARCHI, as a member of the Board of Directors of Trenchless Infrastructure Technologies, Inc.; RAYMOND E. ZILER, as a member of the board of directors of Trenchless Infrastructure Technologies, Inc.; CHARLES EWING, as an agent for Wells Fargo Bank, N.A.; and CBM Group, Inc.,

Defendants.

**APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF NEW MEXICO (D.C. No. 1:10-CV-00071-BB-ACT)**

-2-

Submitted on the briefs:[*]

Daniel W. Cook, Pro Se.

Jay D. Hertz, Michelle K. Ostrye, Sutin, Thayer & Browne, A Professional Corporation, Albuquerque, New Mexico, for Defendant-Appellee Wells Fargo Bank, N.A., Successor to Wells Fargo Bank New Mexico, N.A.

Julie J. Vargas, Catherine F. Davis, Hunt & Davis, P.C., Albuquerque, New Mexico, for Plaintiffs-Appellees Scott Garrett and Pamela Jane Garrett and Defendants-Appellees Garrett Capital, LLC, Catherine F. Davis, Kenneth A. Hunt, and Hunt & Davis, P.C.

---

Before **MATHESON**, **McKAY**, and **EBEL**, Circuit Judges.

---

**McKAY**, Circuit Judge.

---

Daniel W. Cook appeals from an order of the district court awarding fees and costs to his opponents Wells Fargo Bank and Wells Fargo & Co. (Wells Fargo) and Scott Garrett and Pamela Jane Garrett, Trustees of the Scott Garrett and Pamela Garrett Family Trust dated June 14, 1999; Scott Garrett and Pamela Jane Garrett, individually; and Garrett Capital, LLC (Garrett Group). The district court determined that Cook lacked any objectively reasonable basis for attempting to remove this case from New Mexico state court to the District of New Mexico.

---

[*]     After examining the briefs and appellate record, this panel has determined unanimously to grant the parties' request for a decision on the briefs without oral argument. *See* Fed. R. App. P. 34(f); 10th Cir. R. 34.1(G). The case is therefore ordered submitted without oral argument.

Acting under authority granted by 28 U.S.C. § 1447(c), it therefore ordered Cook to pay Wells Fargo $17,116.72 and the Garrett Group $5,208.94. Because we conclude that the district court did not abuse its discretion in awarding these fees and costs, we affirm.

## BACKGROUND

Although the legal issue presented in this appeal is fairly straightforward, the procedural history of the case is complex. It began in November 2003, when Scott Garrett and Pamela Jane Garrett, as trustees of the Scott Garrett and Pamela Garrett Family Trust (Garrett Trust) filed an action (No. CV-2003-08008) against Cook and others in the Second Judicial District Court in the State of New Mexico. In this action, the Garrett Trust, which was a shareholder in Hydroscope Group, Inc. (HGI),[1] alleged claims against Cook arising out of his actions as an officer and director of HGI and its subsidiaries.

In 2004, the Garrett Trust amended its complaint, adding Wells Fargo as a defendant. In 2005, Wells Fargo added its own claims to the suit as a third party plaintiff, seeking foreclosure of its security interest in property owned by Hydroscope Canada, Inc. (HCAN), which is a subsidiary of Hydroscope Inc., USA (HUSA), itself a subsidiary of HGI. Also in 2005, Cook, as debtor-in-possession of his Chapter 11 bankruptcy estate, together with his wife

---

[1]   HGI later became known as "Trenchless Infrastructure Technologies" and also did business under the name "Hydroscope Integrated Technologies, Inc."

Yolanda Cook, HGI, and HUSA, filed a separate suit (No. CV-2005-09114) against Wells Fargo in the Second Judicial District Court. This suit was later consolidated with No. CV-2003-08008.

In 2006, the Garrett Trust filed a third amended complaint in the consolidated state court proceeding. This complaint alleged that Cook had formed a new corporation, CBM Group, Inc., a Nevada Corporation (CBM) and had fraudulently conveyed all of HCAN's assets to CBM.

On February 18, 2009, the state district court granted summary judgment to Wells Fargo on its claims against HGI, its related entities, and CBM. The court foreclosed Wells Fargo's security interest in certain property owned by HGI and its related entities. The district court also dismissed with prejudice the Garrett Trust's and the Cooks' claims against Wells Fargo. Cook filed several post-judgment motions, but before they could be heard, he appealed the state district court's decision to the New Mexico Court of Appeals. On January 26, 2010, the New Mexico Court of Appeals dismissed his appeal and remanded to the district court for disposition of the outstanding motions.

In the meantime, in August 2009, Cook filed a complaint in state court, without leave of court, asserting claims against the Garrett Group, their attorneys, Wells Fargo, and its employees. In response, Wells Fargo applied for an injunction to enjoin Cook from filing further pleadings in state court without either employing a licensed attorney or obtaining court permission. On

October 14, 2009, the Honorable Ted Baca entered an order granting Wells Fargo's application for injunctive relief. In the order, he found that Cook had "engaged in a pattern of litigation activity that is abusive and vexatious such that his access to this Court and any other state or local court should be restricted[.]" R. at 82. He then imposed restrictions on Cook's further filings, requiring leave of court before Cook filed "any lawsuits, pleadings, motions, or any other documents in any district court in the state of New Mexico without the representation and signature of a licensed attorney." *Id.*

Cook responded two months later by filing a writ petition with the New Mexico Supreme Court seeking to stay and/or overturn the orders restricting his pro se filings and granting summary judgment to Wells Fargo. He contended that Judge Baca had discriminated against him as a debtor in bankruptcy and had violated his substantive and procedural due process rights. He did not claim in this petition, however, that Judge Baca had exhibited racial prejudice against him in his rulings. On January 6, 2010, the New Mexico Supreme Court denied the writ petition.

As mentioned, on January 26, 2010, the New Mexico Court of Appeals dismissed Cook's appeal from the state district court's order granting summary judgment in favor of Wells Fargo. The next day, which was also the day before a scheduled hearing on Wells Fargo's motion to dismiss Cook's August 2009 complaint, Cook filed his notice of removal to federal court. He sought to remove

the consolidated cases pending before "the Honorable Theodore C. Baca a Hispanic," relying, among other bases, on the federal district court's "federal subject matter authority over racial equality claims." *Id.* at 18. As statutory authority for the removal, he cited 28 U.S.C. §§ 1331, 1334(a), 1343(a)(3), 1367, and 1443(1). *Id.*

The notice of removal alleged in conclusory fashion that "Judge Baca knowingly discriminated against Cook because Cook was a 'white guy.'" R. at 28. It offered no direct evidence of discriminatory animus, but cited Judge Baca's adverse rulings, alleged denials of Cook's due process rights, and alleged retaliation against Cook through various decisions in the case. The removal notice also asserted in conclusory fashion that the New Mexico Supreme Court, "dominated by Hispanics," *id.*, had "avoided [its] responsibility to police an inferior court," *id.* at 29. Finally, it asserted that Judge Baca had acted in concert with a number of other court officers, most of them non-Hispanic, in denying Cook his civil rights as a white person.

The federal district court subsequently entered its order remanding the case to state court. Citing Cook's "novel, largely unsupported arguments and procedural machinations," *id.* at 470, and "reams of vexatious and unfounded arguments," *id.* at 472, it noted "several unorthodox aspects of Mr. Cook's removal," *id.* Chief among these was "the large amount of time that elapsed between the filing of the suit and Mr. Cook's notice of removal." *Id.*

-7-

Ordinarily, a defendant must remove a case to federal court

> within thirty days after the receipt by the defendant, through service or otherwise, of a copy of the initial pleading setting forth the claim for relief upon which such action or proceeding is based, or within thirty days after the service of summons upon the defendant if such initial pleading has then been filed in court and is not required to be served on the defendant, whichever period is shorter.

28 U.S.C. § 1446(b).

> [But i]f the case stated by the initial pleading is not removable, a notice of removal may be filed within thirty days after receipt by the defendant, through service or otherwise, of a copy of an amended pleading, motion, order or other paper from which it may first be ascertained that the case is one which is or has become removable[.]"

*Id.*

Although Cook's notice of removal failed to designate which pleading had triggered the removal, the district court examined several possibilities, including the Garrett Trust's initial complaint; its amended complaint; its second amended complaint; Cook's own complaints; the state court's order dismissing Wells Fargo; and the order of filing restrictions. The court concluded that Cook had not filed a timely notice of removal from any of them, and that he "lacked any colorable basis for removing in the first place." R. at 473. Although it did not rely on the lack of a jurisdictional basis for removal, the district court concluded that the removal had not been objectively reasonable, because

> [n]othing that occurred in the thirty days prior to removal could have given Mr. Cook a reasonable belief that the suit had become removable. Indeed, it appears from the record that Mr. Cook's removal had far less to do with obtaining federal jurisdiction than it

-8-

did with avoiding state-court jurisdiction--specifically the state court's injunction and the impending hearing on the motion to dismiss. Where, as here, a litigant's decision to remove comes years late and appears to have been spurred by a desire to avoid an adverse state-court ruling, no objectively reasonable grounds for removal exists.

*Id.* at 474.

Accordingly, the district court awarded fees and costs to the Garrett Group and Wells Fargo.

## ANALYSIS

The district court awarded fees and costs pursuant to 28 U.S.C. § 1447(c), which reads as follows:

> (c) A motion to remand the case on the basis of any defect other than lack of subject matter jurisdiction must be made within 30 days after the filing of the notice of removal under section 1446(a). If at any time before final judgment it appears that the district court lacks subject matter jurisdiction, the case shall be remanded. *An order remanding the case may require payment of just costs and any actual expenses, including attorney fees, incurred as a result of the removal.* A certified copy of the order of remand shall be mailed by the clerk to the clerk of the State court. The State court may thereupon proceed with such case.

28 U.S.C. § 1447(c) (emphasis added).

We recently summarized our standard of review of a district court's award of fees and costs under § 1447(c):

> Although we generally lack jurisdiction over remand orders, we do have subject-matter jurisdiction to review the district court's order under § 1447(c) awarding attorney's fees to plaintiffs. A court's decision to grant a fee award is reviewed for abuse of discretion, while the underlying legal analysis is reviewed de novo.

-9-

> The standard for awarding fees should turn on the reasonableness of the removal. Absent unusual circumstances, courts may award attorney's fees under § 1447(c) only where the removing party lacked an objectively reasonable basis for seeking removal. Conversely, when an objectively reasonable basis exists, fees should be denied.

*Porter Trust v. Rural Water Sewer & Solid Waste Mgmt. Dist. No. 1*, 607 F.3d 1251, 1253 (10th Cir. 2010) (quotations, citations, and internal brackets omitted).

A defendant's untimeliness in filing his notice of removal is "precisely the type of removal defect contemplated by § 1447(c)." *Things Remembered, Inc. v. Petrarca*, 516 U.S. 124, 128 (1995) (discussing non-reviewability provision). If objectively unreasonable, an untimely removal may give rise to an award of fees and costs under § 1447(c). *See Durham v. Lockheed Martin Corp.*, 445 F.3d 1247, 1254 (9th Cir. 2006).

At the outset, we consider the effect of Cook's bankruptcy proceedings on the district court's award of fees and costs.[2] We must determine whether the award was barred by the automatic stay that came into effect when Cook filed his petition. As we have noted, this case began in state court in 2003. Cook filed his bankruptcy petition in 2004. He filed the notice of removal at issue here on January 27, 2010. He thus voluntarily pursued, post-petition, a separate round of litigation in federal court.

The automatic stay prohibits

---

[2] We obtained supplemental briefing from the parties concerning this issue.

the commencement or continuation, including the issuance or employment of process, of a judicial, administrative, or other action or proceeding against the debtor *that was or could have been commenced before the commencement of the case under this title*, or to recover a claim against the debtor *that arose before the commencement of the case under this title*[.]

11 U.S.C. § 362(a)(1) (emphasis added).[3]

Thus, "[t]he stay is limited to actions that could have been instituted before the petition was filed or that are based on claims that arose before the petition was filed. It does not include actions arising post-petition." *Bellini Imports, Ltd. v. Mason & Dixon Lines, Inc.*, 944 F.2d 199, 201 (4th Cir. 1991) (citation omitted). Although the Garrett Trust initiated this case by filing its complaint pre-petition against Cook, the attorney's fees and costs at issue here are entirely due to voluntary, post-petition litigation Cook undertook in an unfounded attempt to remove the case to federal court. Under these circumstances, we conclude that the automatic stay does not prevent Cook from being held liable for the attorney's fees and costs. *See Grynberg v. Danzig Claimants (In re Grynberg)*, 143 B.R. 574 (D. Colo. 1990) (upholding, notwithstanding existence of automatic stay, post-petition award of costs from state appellate court where litigation was

---

[3] The litigation against Cook evidently was permitted to proceed in state court during the bankruptcy because the bankruptcy court entered a series of orders retroactively annulling in part the automatic stay. *See* 11 U.S.C. § 362(d) (authorizing bankruptcy court to grant relief from stay); *Cook v. Wells Fargo Bank, N.A.*, Adversary No. 11-1074 S, 2011 WL 1675299 (Bankr. D.N.M. Apr. 28, 2011); R., Vol. I at 229-32 (orders granting and interpreting partial relief from stay).

initiated pre-petition but debtor pursued appeal post-petition resulting in costs), *aff'd on other grounds,* 966 F.2d 570 (10th Cir. 1992).[4]  We therefore proceed to the merits of Cook's appeal.

Cook argues his removal was timely and therefore objectively reasonable for two reasons.  First, he contends that the thirty-day period for removal cannot run from the date on which he was allegedly served with the Garrett Trust's Third Amendment Complaint, because this complaint was unaccompanied by a summons and therefore did not provide him with notice that he needed to remove the proceeding.  Aplt. Opening Br. at 12.  Even if Cook were correct that service of the complaint on him was inadequate--a debatable proposition under New Mexico law that we need not address here--*and* that this inadequate service meant that he did not receive notice of his right of removal sufficient to trigger the thirty-day period for removing the case, this would not mean that the purported

---

[4]     Wells Fargo also asserts that Cook received a discharge in bankruptcy before he filed his attempted removal.  While we have been unable to verify this assertion in the record we have, for similar reasons to those pertaining to the automatic stay, held the award of fees and costs would not be subject to discharge. *Shure v. State of Vermont (In re Sure-Snap Corp.)*, 983 F.2d 1015, 1018-19 (11th Cir. 1993) (reversing district court's determination that debtor was not liable for fees and costs resulting from debtor's post-confirmation appeal from pre-confirmation judgment upholding validity of agreement); *see also Boeing N. Am., Inc. v. Ybarra (In re Ybarra)*, 424 F.3d 1018, 1024 (9th Cir. 2005) ("[P]ost-petition attorney fee awards are not discharged where post-petition, the debtor voluntarily pursued a whole new course of litigation, commenced litigation, or returned to the fray voluntarily." (internal quotation marks and brackets omitted)).

removal was *timely* or objectively reasonable. It would merely mean that the thirty-day period for removal did not begin to run on the date when he was purportedly served with the Third Amended Complaint. In order for the removal to be timely, it would still need to run from some other event that occurred within thirty days before the date on which Cook filed his notice of removal.

Cook's argument that the thirty days has not yet commenced even now and that "removal would remain reasonable and timely today," because he has not yet been served with a summons, *see id.* at 15, demonstrates his lack of understanding of this principle. As the district court recognized, removal *prior to* the occurrence of a triggering event such as proper service of the Third Amendment Complaint with the allegedly required summons would have been premature and thus ineffectual. *See* R. at 473 n.6 (noting 28 U.S.C. § 1446 "requires a litigant to wait until after the filing of the pleading on which the removal is predicated."). A patently premature removal would not have triggered the district court's jurisdiction and would therefore have been as objectively unreasonable as an untimely one. *Cf. Harris v. Bankers Life & Cas. Co.*, 425 F.3d 689, 697 (9th Cir. 2005) (noting premature removal can lead to imposition of Rule 11 sanctions). Cook fails to cite authority permitting him to remove his case based on a pleading whose service would be completed at some time in the future. More importantly, with the exception of his "civil rights exhaustion" argument, which we discuss below, Cook fails to argue why service of any of the Garrett Trust's *prior*

-13-

complaints, which he does not dispute were served on him, did not trigger the thirty-day period for filing a notice of removal to federal court.[5] It is the earliest pleading putting a defendant on notice of removability that counts, not the latest one. *See* 28 U.S.C. § 1446(b). Simply put, Cook's Third Amended Complaint argument is a red herring.[6]

Cook has a fall-back argument. He contends his notice of removal was timely because he sought removal under 28 U.S.C. § 1443(1). This statute provides removal to federal district court for a "civil action[] or criminal prosecution[], commenced in a State court . . . (1) Against any person who is denied or cannot enforce in the courts of such State a right under any law providing for the equal civil rights of citizens of the United States, or of all persons within the jurisdiction thereof[.]" *Id.* He argues that it was not possible to determine whether he would be denied or unable to enforce his right to equal protection in the New Mexico state courts until he had "exhausted his rights with

---

[5]    In his reply brief, Cook asserts in conclusory fashion that "the only complaint and summons ever served upon Appellant was dismissed on March 5, 2005." Aplt. Reply Br. at 6. He fails to reconcile this assertion with the fact that the case continues with his active participation.

[6]    The provision in § 1446(b) permitting removal "within thirty days after the service of summons upon the defendant" does not apply here, because it is only applicable if the initial pleading "has then been filed in court and is not required to be served on the defendant." Cook fails to show that service of the Third Amended Complaint on him was optional. Moreover, reliance on this statute, if it applied, would still have resulted in a premature removal so long as the summons had not yet been served.

the New Mexico Supreme Court" by obtaining a ruling on his writ petition. Aplt. Opening Br. at 2. The New Mexico Supreme Court denied his motion for reconsideration of its denial of his writ petition on January 27, 2010. Therefore, Cook asserts, his notice of removal, filed that same day, was timely. *See id.* at 4.[7]

Irrespective of the merits of his "exhaustion" argument, Cook's contention suffers from a threshold defect. In our previous decision in this case, we determined that "Mr. Cook's conclusory allegations of racial discrimination in the state courts do not meet the requirements of § 1443(1)." *Garrett v. Cook*, No. 10-2207, Order at 3 (10th Cir. Nov. 3, 2010), *reproduced at* R. at 615. This determination by a prior panel binds us under the "law of the case" doctrine, *see, e.g., Ford v. Pryor*, 552 F.3d 1174, 1179 (10th Cir. 2008), a principle from which Cook gives us no reason to depart here.

Because Cook stated no basis for removal under § 1443(1), his "civil rights exhaustion" argument collapses as the trigger for a timely removal. Moreover, the district court did not abuse its discretion in determining that notwithstanding his conclusory allegations under § 1443(1), the attempted removal was objectively unreasonable. Cook fails to identify another event during the thirty days prior to his notice of removal that could have triggered a timely removal on

---

[7]    Cook also cites the initial denial of his writ petition on January 6, 2010. *See* Aplt. Opening Br. at 16. Our analysis is the same whether we consider the initial denial of the writ petition or the denial of his motion for reconsideration as the alleged trigger for removal.

-15-

some other basis. Accordingly, we cannot disagree with the district court that Cook's notice of removal was both untimely and objectively unreasonable. We discern no abuse of discretion in the district court's award of attorney's fees and costs to Wells Fargo and the Garrett Group.

The judgment of the district court is AFFIRMED.