**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**

DANIEL W. COOK, individually,

        Plaintiff-Appellant,

v.

THE HONORABLE THEODORE C.
BACA, individually and in his official
capacity; WELLS FARGO BANK, N.A.;
WELLS FARGO & COMPANY; JAY D.
HERTZ, Esq.; MICHELLE K. OSTRYE,
Esq., both individually and as counsels
for Wells Fargo Bank, N.A. and Wells
Fargo Company; PENNY T. KNIPPS,
individually and in her capacity as a V.P.
of Wells Fargo Bank, N.A.; SUTIN,
THAYER AND BROWN P.C.; SCOTT
GARRETT, individually; SCOTT AND
PAMELA GARRETT TRUST DATED
JUNE 14, 1999; BID GROUP, INC.;
GARRETT CAPITAL, LLC; JULIE
VARGAS, Esq.; CATHERINE DAVIS,
Esq., both counsels for Scott Garrett, the
Garrett Trust, Garrett Capital, LLC, and
Bid Group, Inc.; HUNT & DAVIS, P.C.,
JOHN DOE and/or JANE DOE,

        Defendants-Appellees.

No. 12-2023
(D.C. No. 1:10-CV-01173-JAP-KBM)
(D. N.M.)

**ORDER AND JUDGMENT**[*]

---

[*]    After examining the briefs and appellate record, this panel has determined unanimously that oral argument would not materially assist the determination of this appeal. *See* Fed. R. App. P. 34(a)(2); 10th Cir. R. 34.1(G). The case is therefore ordered submitted without oral argument. This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral

(continued)

Before **GORSUCH**, **ANDERSON**, and **EBEL**, Circuit Judges.

Daniel W. Cook, proceeding pro se, appeals from the district court's orders in this civil rights case that dismissed his first amended complaint for failure to state a claim, denied his motion to re-open and for reconsideration, and denied his motion for leave to amend. We affirm the dismissal of his complaint in part and remand with instructions to modify a portion of the dismissal from a dismissal with prejudice to a dismissal without prejudice for lack of subject-matter jurisdiction. We affirm the remainder of the district court's orders.

## BACKGROUND

In Mr. Cook's 117-page, pro se, verified first amended complaint ("FAC" or "complaint"), he alleged numerous violations of his constitutional rights and of various federal statutes. The FAC is a recent installment in what the bankruptcy court for the District of New Mexico characterized as

> the long, twisted litigation history of Mr. Cook with the various parties
> that has proceeded in the New Mexico State District Court, the New
> Mexico Court of Appeals, the New Mexico Supreme Court, the
> Bankruptcy Court, the District Court, and the Tenth Circuit Court of
> Appeals and has included, among other items, requests to enjoin the
> state court from ruling, removals, remands, sanctions, an application for

estoppel. It may be cited, however, for its persuasive value consistent with
Fed. R. App. P. 32.1 and 10th Cir. R. 32.1.

a writ of mandamus, motions to reconsider virtually every order entered
by every judge, a motion in the Tenth Circuit for a rehearing en banc,
suits against judges and the adverse parties' attorneys, and claims of
conspiracy, RICO violations and civil rights deprivations.

*In re Cook*, No. 7-04-17704-SA, 2012 WL 5408905, at *16 (Bankr. D. N.M Nov. 6,

2012).

In order to lay the groundwork for our ruling, we first provide here a brief

summary of the relevant portions of the FAC. As the parties are familiar with its

contents, we present only an abbreviated summary of its allegations.

### 1. Background (First Amended Complaint, ¶¶ 1-88)

In its order dismissing the FAC, the district court determined that it asserted

three main types of federal claims: (1) claims for racial discrimination (Counts I

through VI); (2) a claim for violations of Securities and Exchange Commission

(SEC) Rule 10b-5 (Count VII); and (3) claims seeking relief for alleged civil

violations of the Racketeer Influenced Corrupt Organizations Act (RICO) (Claims

X-XIII).[1] On appeal, Mr. Cook has abandoned his racial discrimination claims,

RICO claims, and claims against state court judge Theodore C. Baca individually and

for damages. *See* Aplt. Opening Br. at 5. Accordingly, we find it unnecessary to

discuss in detail the factual underpinnings of these claims. But he also asserts that

some of his claims in Counts I through VI alleged a conspiracy to violate his civil

---

[1]     Claims VIII and IX included state-law claims that are not at issue in this
appeal.

- 3 -

rights and an "alleged failure to prevent wrongs," *id.* at 2, that were unrelated to racial discrimination, *see id.* at 3.[2]

Stripped of scurrilous material and invective, the FAC may be summarized as follows. It begins with a lengthy recitation of difficulties resulting from the alleged failure to implement a 2001 settlement agreement involving (1) the Cooks,[3] (2) their company Hydroscope Group, Inc. ("Group") and its subsidiaries; (3) a related company known as Hydroscope Canada, Inc. (HCAN); (4) Scott Garrett and the Garrett Trust, prospective investors in the Group; and (5) Wells Fargo.

The origins of the settlement agreement are unclear from Mr. Cook's complaint. They are, however, described in some detail as part of the Garrett Trust's complaint against Mr. Cook and others filed in New Mexico state court. The record contains a copy of the Trust's third amended state court complaint, which describes its investment in the Group and its dissatisfaction with Mr. Cook's alleged misconduct in connection with that investment. R., Vol. 2 at 30-35. The complaint explains that "[o]n March 30, 2001, at the request of [Mr.] Cook and the Hydroscope Board of Directors, [the] Garretts and Hydroscope entered into a settlement agreement which provided for the repurchase of [Mr.] Garrett's stock." *Id.* at 35. As

---

[2]    Mr. Cook misleadingly asserts that the district court "misapprehended, ignored and or overlooked" these claims. *Id.* In fact, as will be discussed, the district court addressed the claims on the merits in detail in its order denying his motion for re-opening and reconsideration.

[3]    Yolanda Cook, Mr. Cook's wife, who joined him in the settlement agreement and his subsequent bankruptcy, is now deceased.

part of the agreement, Mr. Garrett was to be granted a license for the exclusive use of the Hydroscope technology in the state of California. *Id.*

But this technology was pledged to Wells Fargo, which could potentially have affected Mr. Garrett's exercise of his rights. *Id.* at 36. To help deal with this problem, the parties entered into a Forbearance Agreement, which allegedly required Wells Fargo to provide Mr. Garrett with a non-disturbance agreement pledging not to interfere with Mr. Garrett's exercise of IP rights. Once this was accomplished, Mr. Garrett was to receive a sublicense of certain IP rights from HCAN. He and his trust were to then release $50 million in investment funds to the Group.

This non-disturbance agreement was never executed, however, allegedly due to Wells Fargo's intransigence concerning the terms of the proposed agreement. As a result, Wells Fargo

> caused there to be no settlement with Garrett et al to be effectuated, it caused the $50 million investment not to be completed, it caused the Cooks to lose their home, it caused the Cooks to lose their office complex, it caused HCAN to sell IP that was allegedly pledged and facing foreclosure, and it caused the Cooks to file their Chapter 11 [bankruptcy] to seek time to resolve differences and disputes that the Bank was contractually obligated to [resolve].

R., Vol. 1 at 172 (¶ 58). The FAC also asserts that due to Wells Fargo's failure to effectuate the settlement, HCAN could not afford to pay "maintenance fees" on the IP and was therefore forced to sell the IP before its rights expired "for lack of payment of maintenance fees to the different patent offices and or intellectual property agencies worldwide." *Id.* (¶ 59). Among

- 5 -

the purchasers of HCAN's IP were the Cooks and a business known as CBM Group, Inc. ("CBM").

On October 21, 2004, more than three years after the settlement agreement had been executed, and with no non-disturbance agreement yet in place, the Cooks filed a Chapter 11 bankruptcy petition. In December 2004, as debtors-in-possession, they filed an adversary proceeding in bankruptcy court against Wells Fargo. In the adversary proceeding, the Cooks asserted claims against Wells Fargo allegedly transferred to them by the Group before their bankruptcy filing.

Wells Fargo objected to the bankruptcy court's jurisdiction over the adversary proceeding. The Cooks responded by protectively filing a complaint in New Mexico state court containing similar claims to those asserted in the adversary proceeding. Wells Fargo responded with a motion for summary judgment in state court, seeking to foreclose its interest in some of the IP and to have the Cooks' "individual and corporate owned claims transferred to the Cooks individually pre-petition" dismissed. *Id.* at 175 (¶ 73). By filing this summary judgment motion, Wells Fargo allegedly violated the automatic stay in the Cooks' Chapter 11 bankruptcy.

Wells Fargo also objected to having the Cooks remain debtors-in-possession in the bankruptcy proceeding. In July 2006, on motion by Wells Fargo, the bankruptcy court appointed Linda Bloom Chapter 11 trustee for the Cooks' estate. In March 2008 the court converted the Chapter 11 case to a Chapter 7 case.

By December 2006, Mr. Cook allegedly had reached an agreement with Trustee Bloom that would have allowed the bankruptcy estate's claims against Wells Fargo and others to be litigated in the state court proceedings, led by Mr. Cook. But the FAC asserts that Trustee Bloom "mysteriously and without prior notice" to Mr. Cook's counsel withdrew her consent to this arrangement on December 18, 2006. *Id.* at 177 (¶ 86).

The FAC next describes three illegal fraudulent schemes allegedly perpetrated against Mr. Cook by the defendants. To the extent these allegations concern his abandoned RICO claims, they are irrelevant. It appears, however, that they may also be intended to support his civil rights claims. Accordingly, we briefly describe them.

## 2. "Scheme One" (Complaint, ¶¶ 89 – 114)

In this first scheme, the defendants filed a "Stipulated Motion to Approve Compromise of Controversy" (Motion to Approve) with the bankruptcy court. *Id.* ¶ 96. As part of the compromise, Wells Fargo agreed to pay Trustee Bloom $100,000 as a "bribe." It was a curious sort of bribe, however, for the money apparently was to be paid to the Cook bankruptcy estate rather than to Trustee Bloom personally.

Trustee Bloom allegedly agreed to falsely affirm that the Cook bankruptcy estate was the owner of the IP previously purchased by CBM, to confirm Wells Fargo's asserted lien interest in all of the IP, and to consent to lifting of the automatic stay. With the stay lifted, Wells Fargo agreed to foreclose on all the IP and to give

the IP to Scott Garrett. Trustee Bloom would then give Mr. Garrett control over the Cooks' shares in the Group. Mr. Garrett would elect himself an officer of the Group and dismiss all of the claims of the Group and its subsidiaries against the defendants, including himself. Trustee Bloom further agreed to dismiss all of the Cooks' individually owned claims against Wells Fargo and Mr. Garrett. The net result would be loss of the IP owned by CBM and the Cook bankruptcy estate and the loss of the Cooks' claims against the defendants, without any corresponding benefit to the Cook bankruptcy estate.

### 3. "Scheme Two" (Complaint, ¶¶ 115 – 198)

Scheme One was to some degree thwarted after CBM filed an adversary proceeding in the Cooks' bankruptcy case. The bankruptcy court held a trial on CBM's allegations, which the FAC asserts "did not go well" for the defendants. *Id.* at 184 (¶ 112). Failure to achieve their goals in the bankruptcy court allegedly caused the defendants to hatch what the FAC describes as "Scheme Two."

Scheme Two involved proceedings in New Mexico state court. The defendants allegedly made misrepresentations to the state court concerning the bankruptcy estate's ownership of CBM's IP, HCAN's claims, and the Group and HUSA's defenses. On August 27, 2008, the state case was reassigned to the Honorable Theodore C. Baca, who is named as a defendant in the FAC. The appointment of Judge Baca coincided with the inception of what the complaint refers to as "Scheme Three."

**4. "Scheme Three" (Complaint, ¶¶ 199 – 292)**

Judge Baca allegedly "racially discriminated against [Mr.] Cook and denied [Mr.] Cook his federally protected civil rights," and the defendants "exploited the prejudice of Judge Baca in intentionally denying [Mr. Cook] his civil rights," and/or "conspired with Judge Baca to deny [Mr. Cook] his civil rights." *Id.* at 199 (¶¶ 199, 201-02). Mr. Cook allegedly provided Judge Baca with state court and bankruptcy court orders "specifically giving the Cooks separate standing [to pursue claims and defenses pertaining to the IP] and reiterating that grant in the state court action from that of the Chapter 7 trustee to defend estate property in which the Cooks had an interest," and "reminding all that federal jurisdiction over estate owned claims was still pending before the U.S. District Court." *Id.* at 199-220 (¶ 204). He also filed three motions "[t]o make sure Judge Baca, new to the case, understood the status of the case." *Id.* at 201 (¶ 209).

But at a hearing on February 18, 2009, "Judge Baca without notice to [Mr.] Cook and without [Mr.] Cook having an opportunity to prepare, first heard a motion Judge Baca had scheduled to hear on April 7, 2009 and then declared Cook could not participate in the state court case." *Id.* at 202 (¶ 214). Judge Baca then entered judgment in favor of Wells Fargo, permitting Wells Fargo to foreclose on the IP and dismissing the claims and defenses asserted by the Group and its subsidiaries, HCAN, CBM, and the Cooks and their bankruptcy estate. These actions denied Mr. Cook his fundamental rights to due process and a fair hearing, along with his

equal civil rights to protect his property interest and "to have equal access to and be heard in a place of public accommodation," and his right to a fresh start under the Bankruptcy Code. *Id.* (¶ 215).

The FAC further alleges that Judge Baca denied Mr. Cook's request to enter formal findings of fact and conclusions of law in support of his orders. Wells Fargo also filed a motion seeking injunctive relief in the form of filing restrictions against Mr. Cook. Judge Baca converted the TRO hearing into a hearing on a preliminary injunction—which resulted in an order of permanent filing restrictions—without notice to Mr. Cook. In entering the filing restriction order, the FAC asserts, Judge Baca acted in collusion with and/or in privity with the interests of Wells Fargo and its attorneys and in collusion with or supported by Garrett et al. and their attorneys, in depriving Mr. Cook of his constitutional rights.[4]

After the order of filing restrictions was entered, Mr. Cook sought an extraordinary writ from the New Mexico Supreme Court. The New Mexico Supreme Court denied his petition. He then unsuccessfully attempted to remove the state court action to federal district court. *See Garrett v. Cook*, 652 F.3d 1249, 1257 (10th Cir. 2011) (upholding award of attorney's fees and costs to Wells Fargo and Garrett Group based on untimely and objectively unreasonable notice of removal).

---

[4] The district court dismissed the FAC's claims against Judge Baca based on absolute judicial immunity.

- 10 -

### 5. Securities Law Claims (Count VII)

The FAC also includes a claim for "fraud, interference in contract [sic] & violations of securities act & Nevada securities laws . . . and slander of title, violations of N[ew] M[exico] securities law & unfair trade practices." R., Vol. 1 at 228. This claim seeks "to clear title to and the exercised control over [sic] securities for which [sic] are owned by Plaintiff individually, and for which Plaintiff has the assigned right by [Group and CBM] to pursue actions that diminish and or affect securities of Group and CBM[.]" *Id.* at 229 (¶ 384).

The Cooks allegedly claimed certain shares of Group and CBM as exempt personal property in their Chapter 11 bankruptcy. But Wells Fargo fraudulently asserted in the bankruptcy proceedings that these shares had been pledged as collateral to Wells Fargo. Wells Fargo also claims to hold a stock certificate for 1,720,000 shares in Group pledged as collateral, but the FAC asserts that this certificate was cancelled long ago and that these shares were never actually pledged to Wells Fargo. Wells Fargo allegedly also wrongfully asserts a security interest in 20,000 of the Cooks preferred shares in Group, and in one share of CBM common stock.

The FAC asserts that Wells Fargo and Garrett et al. falsely asserted an interest in these securities in state court proceedings. Through fraudulent misrepresentation, Wells Fargo and Garrett obtained an injunction in state court preventing Group from issuing additional shares and preventing CBM from completing its contract involving

a merger with a publically-traded company, Galtech.  Mr. Garrett purchased restricted shares in Group and transferred these shares to the Garrett Trust without permission from the Group's Board of Directors, in violation of the Nevada securities laws and federal securities statutes.

### 6.  Disposition of Mr. Cook's Post-Judgment Motions

After the district court dismissed all of Mr. Cook's federal claims with prejudice, and declined to exercise jurisdiction over his remaining state law claims, he filed a motion to re-open and for reconsideration.  In response, the district court expanded on its reasoning in its previous order of dismissal.  In particular, it provided a detailed discussion of its reasons for rejecting Mr. Cook's non-racially-based discrimination claims, and explained why the state-court order of filing restrictions did not deny Mr. Cook access to the courts.  The district court also explained that it had dismissed his claims with prejudice because his claims failed as a matter of law and it would be futile to grant him leave to amend them.

Mr. Cook also filed a post-judgment motion for leave to amend the FAC, to which he attached an 87-page proposed second amended complaint.  He later filed a revised proposed second amended complaint, also 87 pages long, purporting to make several (undisclosed) corrections to the proposed second amended complaint, and a "notice of errata and correction" again modifying his proposed second amended complaint, both of which the district court explicitly stated it had considered in ruling on his motion for leave to amend.  R., Vol. 1 at 778.  The district court carefully

analyzed each of the claims in the proposed second amended complaint and concluded that all of them would be subject to dismissal if the amendment were allowed, and that the motion to amend should therefore be denied.

## ANALYSIS

### I. Jurisdictional Issues

The district court disposed of Mr. Cook's federal claims on the merits, concluding that they failed to state a claim. The Wells Fargo Defendants contend that all or part of the complaint should have been dismissed, either under the *Rooker-Feldman* doctrine or for lack of standing.

### A. *Rooker-Feldman* Doctrine

In its dismissal order, the district court declined to consider whether the *Rooker-Feldman* doctrine applied. *Rooker-Feldman*, however, "concerns a district court's subject-matter jurisdiction," *Lance v. Coffman*, 549 U.S. 437, 439 n* (2007), and must therefore be considered "before proceeding to the merits," *id.* at 439.[5]

"*Rooker-Feldman* is a jurisdictional prohibition on lower federal courts exercising appellate jurisdiction over state-court judgments." *Campbell v. City of Spencer*, 682 F.3d 1278, 1281 (10th Cir. 2012). It applies to "cases brought by state-court losers complaining of injuries caused by state-court judgments rendered

---

[5] But in its order denying leave to amend, the district court concluded that Count I of the proposed second amended complaint, which asserted a claim that Judge Baca violated Mr. Cook's civil due process rights, *would* be barred by *Rooker-Feldman*.

before the district court proceedings commenced and inviting district court review and rejection of those judgments." *Exxon Mobil Corp. v. Saudi Basic Indus. Corp.*, 544 U.S. 280, 284 (2005). *Rooker-Feldman* prohibits "review of the proceedings already conducted by the [state court] tribunal to determine whether it reached its result in accordance with law." *Campbell*, 682 F.3d at 1283 (internal quotation marks omitted).

The defendants assert that *Rooker-Feldman* bars Mr. Cook's complaints about the state court's October 14, 2009, injunctive order of filing restrictions. We need only address one of Mr. Cook's replies to this assertion, involving whether the order of filing restrictions was "final" before he filed his suit in federal court.

"*Rooker-Feldman* applies only to suits filed after state proceedings are final." *Guttman v. Khalsa*, 446 F.3d 1027, 1032 (10th Cir. 2006). State proceedings generally become final either after the highest state court has affirmed a judgment or the time to appeal has expired. *See id.* at 1032 n.2. Wells Fargo argues that because the time to appeal from the order of filing restrictions expired 30 days after the date it entered, that order was "final" for *Rooker-Feldman* purposes when Mr. Cook filed his suit in federal court.[6]

---

[6] Mr. Cook did not appeal the filing restriction order within 30 days of its entry. *See* N.M. Rule Ann. 12-201(A)(2) (requiring that notice of appeal be filed "within thirty (30) days after the judgment or order appealed from is filed in the district court clerk's office."). Instead, he filed a "Verified Petition for Extraordinary Writs and Request for Stay" on December 14, 2009 with the New Mexico Supreme Court. The New Mexico Supreme Court denied the petition without comment. Mr. Cook then

(continued)

- 14 -

We cannot agree with Wells Fargo's argument. Generally speaking, the right to appeal in New Mexico state court is restricted to final judgments and decisions. *See* N.M. Stat. Ann. § 39-3-2 (1966) ("Within thirty days *from the entry of any final judgment or decision*, any interlocutory order or decision which practically disposes of the merits of the action, or any final order after entry of judgment which affects substantial rights, in any civil action in the district court, any party aggrieved may appeal therefrom to the supreme court or to the court of appeals, as appellate jurisdiction may be vested by law in these courts." (emphasis added)). Wells Fargo fails to show that the order of filing restrictions constituted a "final judgment or decision" within the meaning of this rule, and we have found no authority indicating that the New Mexico courts would treat it as such. Thus, it does not appear that a final judgment had been entered in the New Mexico state court litigation at the time Mr. Cook filed this proceeding. We therefore conclude that the *Rooker-Feldman*

---

filed an additional pleading with the New Mexico Supreme Court in which he requested additional time to file his notice of appeal. It does not appear that additional time was granted. *See* Wells Fargo Aplee. Br. at 23 ("[T]he time for Mr. Cook to appeal the injunction *was not tolled* and has expired." (emphasis added)).

On June 20, 2011, Mr. Cook filed a notice of appeal to the New Mexico Court of Appeals from various orders entered in the (now apparently final) state court litigation. Among the state district court orders which he purported to appeal was the order of filing restrictions of October 14, 2009. *See* "Appellant's Docketing Statement," *Cook v. Wells Fargo Bank, N.A.*, No. 31419, at 6 (N.M. Ct. App. Aug. 15, 2011) (attached to Wells Fargo Aplee. Br. as "Exhibit A").

- 15 -

doctrine does not apply to Mr. Cook's claims concerning the order of filing restrictions.[7]

### B. Standing

As standing is also jurisdictional, we must additionally determine whether Mr. Cook had standing to assert his claims before examining the merits. Wells Fargo argues that Mr. Cook lacks standing to assert any of the claims contained in the FAC, because these claims are the property of his bankruptcy estate and can only be asserted by the Chapter 7 trustee. In addressing this issue, we must also consider Wells Fargo's argument that the Tenth Circuit Bankruptcy Appellate Panel (BAP) has already resolved the issue of standing against Mr. Cook and that the BAP's decision concerning standing is entitled to preclusive effect in this appeal.

### 1. Preclusive Effect of BAP Decision

Mr. Cook appealed to the BAP after the bankruptcy court denied his motions for sanctions against Wells Fargo and Garrett for alleged violations of the automatic

---

[7] The injunctive order of filing restrictions against Mr. Cook could potentially be viewed as separately appealable under the "collateral order" exception to the final judgment rule. *See Carrillo v. Rostro*, 845 P.2d 130, 136-37 (N.M. 1992) (recognizing collateral order doctrine). Whether an appealable collateral order becomes "final" for *Rooker-Feldman* purposes when entered, after expiration for the time for taking a collateral appeal from such an order, and even before a final judgment has entered in the state court action, poses an interesting question. But we need not address this issue, for we have significant doubt that the New Mexico courts would classify the order of filing restrictions as an immediately appealable collateral order. The New Mexico courts apply the collateral order doctrine in only very limited circumstances. *See Williams v. Rio Rancho Pub. Schs.*, 195 P.3d 879, 882 (N.M. App. 2008).

stay.  *In re Cook*, Nos. NM-11-082, 04-17704, 2012 WL 1356490, at *1, 3 (10th Cir. BAP Apr. 19, 2012).  The bankruptcy court had determined that "[Mr.] Cook lacked standing to bring the stay violations motions because causes of action for stay violations are estate property and can only be asserted by the trustee[.]"  *Id.* at 3.  On appeal, the BAP rejected Mr. Cook's arguments that (1) the trustee's notice of abandonment, filed July 1, 2009, conferred standing on Mr. Cook to seek sanctions for the alleged stay violations; and (2) he possessed standing to bring the motion in any event under his claim of exemption and under a Bankruptcy Code provision concerning damages for violations of the automatic stay, *see* 11 U.S.C. § 362(k).  *Cook*, 2012 WL 1356490, at *4-*10.  The BAP concluded that "[Mr.] Cook suffered no injury to a legally protected interest fairly traceable to the Bank's or Garrett's actions" in allegedly violating the stay, and it therefore upheld the bankruptcy court's decision denying standing as to those alleged violations.  *Id.* at *10.

A decision concerning standing may be entitled to preclusive effect in a subsequent proceeding.  *Brereton v. Bountiful City Corp.*, 434 F.3d 1213, 1218-19 (10th Cir. 2006).  Issue preclusion generally applies when four elements are satisfied:

> (1) the issue previously decided is identical with the one presented in the action in question, (2) the prior action has been finally adjudicated on the merits, (3) the party against whom the doctrine is invoked was a party, or in privity with a party, to the prior adjudication, and (4) the party against whom the doctrine is raised had a full and fair opportunity to litigate the issue in the prior action.

*Park Lane Res. Ltd. Liab. v. U.S. Dep't of Agric.*, 378 F.3d 1132, 1136 (10th Cir. 2004) (internal quotation marks omitted).

Mr. Cook supplies us with no reason to conclude that these elements have not been satisfied here.[8] We therefore conclude that he is collaterally estopped from asserting that he has standing to assert his claims against the defendants involving alleged violations of the automatic stay.

## 2. Other Standing Issues

Mr. Cook's allegations concerning violations of the automatic stay, however, comprise only a small part of the wrongs alleged in the FAC. Wells Fargo makes a much broader standing argument. It contends that *all* of the causes of action asserted in the FAC belong to the bankruptcy estate and can therefore only be pursued, if at all, by the Chapter 7 trustee.

If Wells Fargo is correct in its assertion that all the claims asserted in the FAC belong to the bankruptcy estate, we agree with its assertion that Mr. Cook lacks standing to pursue them. *See, e.g., Turner v. Cook*, 362 F.3d 1219, 1225-26 (9th Cir. 2004) (denying standing to debtor to pursue Fair Debt Collection Practices Act, RICO, and state law claims, where such claims belonged to the estate and bankruptcy trustee had been appointed for the estate). *See also Cable v. Ivy Tech*

---

[8] Mr. Cook has appealed the above-mentioned BAP decision to this court. *Cook v. Wells Fargo Bank*, No. 12-2100. Notwithstanding Mr. Cook's assertions to the contrary, the pendency of the appeal does not strip the BAP's decision of preclusive effect. *See* 18A Charles Alan Wright, Arthur R. Miller et al., *Federal Practice & Procedure* § 4433 (2d ed. 1981) ("[I]t is . . . held in federal courts that the preclusive effects of a lower court judgment cannot be suspended simply by taking an appeal that remains undecided."); *Phelps v. Hamilton*, 122 F.3d 1309, 1318 (10th Cir. 1997) (stating general rule).

*State Coll.*, 200 F.3d 467, 472 (7th Cir. 1999) ("In [Chapter 7] liquidation proceedings, *only* the trustee has standing to prosecute or defend a claim belonging to the estate."); 11 U.S.C. § 323 (stating trustee is representative of estate, with capacity to sue and be sued); Fed. R. Bankr. P. 6009 ("With or without court approval, the trustee or debtor in possession may prosecute or may enter an appearance and defend any pending action or proceeding by or against the debtor, or commence and prosecute any action or proceeding in behalf of the estate before any tribunal.").

The dispute here actually centers on two issues: whether Mr. Cook's claims became property of the estate by virtue of his bankruptcy filing, and if so whether the trustee subsequently abandoned them to Mr. Cook, thus restoring his ability to pursue them on his own behalf. We consider each of these issues in turn.

Wells Fargo attempts to reduce all of Mr. Cook's claims "seeking redress for alleged constitutional and civil rights violations" to an attempt to "reverse the state court judge's rejection of Mr. Cook's contention that Wells Fargo Bank's security interest in Hydroscope Canada, Inc's IP was void because Wells Fargo Bank allegedly breached a forbearance agreement in 2001." Wells Fargo Aplee. Br. at 15. Wells Fargo contends that all of the claims flowing from this alleged injury asserted in the FAC belong to the estate, because they either (1) had accrued at the time the Cooks filed their bankruptcy petition; (2) were "sufficiently rooted in the pre-bankruptcy past" to be considered part of the estate; or (3) accrued post-petition and involved an injury to the bankruptcy estate. *Id.*

- 19 -

Filing a petition for bankruptcy creates a bankruptcy estate. 11 U.S.C. § 541(a). This estate comprises property, broadly defined to include "all legal or equitable interests of the debtor in property *as of the commencement of the case*." *Id.* § 541(a)(1) (emphasis added). Under this rule, "[p]re-petition causes of action are part of the bankruptcy estate and post-petition causes of action are not." *Witko v. Menotte (In re Witko)*, 374 F.3d 1040, 1042 (11th Cir. 2004).

Certain claims advanced in the FAC clearly belong to Mr. Cook's bankruptcy estate. Claims concerning Wells Fargo's alleged failure to execute the non-disturbance agreement, for example, had certainly accrued at the time the Cooks filed their bankruptcy petition. Other claims, however, are less clearly property of the estate. The FAC asserts that some of Mr. Cook's claims involve property that is exempt or never became part of the bankruptcy estate. Also, the FAC contains numerous allegations concerning conspiracies against Mr. Cook's interests that are based on events occurring after the Cooks filed their petition.

We have noted Wells Fargo's assertion that these claims should nevertheless be considered part of Mr. Cook's bankruptcy estate because they are "sufficiently rooted in the pre-bankruptcy past." Property that a debtor acquires after the filing of bankruptcy will be considered part of the estate if it is "sufficiently rooted in the pre-bankruptcy past that it should be considered to have accrued to the debtor's estate prior to the bankruptcy filing. *Segal v. Rochelle*, 382 U.S. 375, 380 (1966).

This doctrine applies, for example, in cases where the debtor obtains a contingent interest in property prior to the bankruptcy filing that only matures after the filing. Thus we have held that an employee's stock appreciation rights were part of his bankruptcy estate, even though their vesting was contingent on post-petition events, where the contingent obligation itself arose prior to the bankruptcy filing. *Parks v. Dittmar (In re Dittmar)*, 618 F.3d 1199, 1207-10 (10th Cir. 2010).

Here, by contrast, the FAC alleges tortious actions by the defendants in furtherance of conspiracies that allegedly arose after the Cooks filed their bankruptcy. In particular, the FAC accuses the prior Chapter 7 bankruptcy trustee of participating in a conspiracy involving misconduct committed in the Cooks' bankruptcy proceedings. Allegations of the trustee's participation in the conspiracy make it particularly incongruous to assert that the trustee, rather than Mr. Cook, was the only party with standing to assert such claims. *Cf. Casey v. Grasso (In re Riccitelli)*, 320 B.R. 483, 492 & n.18 (Bankr. D. Mass. 2005) (stating that claim by debtor as against his own estate was particularly unlikely to be considered property of the estate).

In any event, these claims plainly arose after the bankruptcy proceedings were filed. Though, as Wells Fargo argues, the alleged conspiracies involved property that was the subject of dispute between the parties prior to the bankruptcy filing, the alleged constitutional injuries did not exist prior to the filing. Simply put, Mr. Cook alleges harms to his constitutional rights that he suffered post-bankruptcy, not prior

- 21 -

to or contemporaneous with the bankruptcy filing. *See Witko*, 374 F.3d at 1043 (holding legal malpractice claim against debtor's attorneys that arose when divorce proceedings concluded against debtor, which occurred several months after he filed his bankruptcy petition, was not part of bankruptcy estate). These claims were not "sufficiently rooted in the pre-bankruptcy past," and are not part of the estate.

We turn next to Mr. Cook's counter-argument that *none* of his claims belongs to his bankruptcy estate, because the trustee abandoned them to him. A formal abandonment, including compliance with the notice requirements of the Bankruptcy Code, is required to vest the right to pursue the estate's causes of action in the debtor. *See Turner*, 362 F.3d at 1226. As we noted previously, the BAP determined that no such abandonment had occurred in Mr. Cook's case. *Cook*, 2012 WL 1356490, at *6-7. The BAP's decision on this point is entitled to preclusive effect, and we therefore reject Mr. Cook's argument.

### 3. Conclusion

Mr. Cook's claims in the FAC are not barred by the *Rooker-Feldman* doctrine. But some aspects of his claims asserted in the FAC are barred by his lack of standing. He lacks standing to assert claims relative to alleged violations of the automatic stay in bankruptcy, and any other claims that are part of the bankruptcy estate. The district court should have dismissed these portions of Mr. Cook's claims without prejudice for lack of standing. *See Brereton*, 434 F.3d at 1219-20.

## II.  Merits Issues

We turn to Mr. Cook's challenge to the district court's determination on the merits that the FAC did not allege any cognizable federal claims against the defendants.

This court reviews de novo a district court's dismissal for failure to state a claim pursuant to Federal Rule of Civil Procedure 12(b)(6).  *Khalik v. United Air Lines*, 671 F.3d 1188, 1190-91 (10th Cir. 2012).  Accordingly, all well-pleaded allegations of the complaint are accepted as true and viewed in a light most favorable to the nonmoving party.  Federal Rule of Civil Procedure 8 requires a pleading to contain a "short and plain statement of the claim showing that the pleader is entitled to relief."  Fed. R. Civ. P. 8(a)(2).  To survive dismissal under Rule 12(b)(6) for failure to state a claim, plaintiffs must "nudge[ ] their claims across the line from conceivable to plausible."  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).  While factual assertions are taken as true, legal conclusions are not.  A plaintiff is "not required to set forth a prima facie case for each element, [but] is required to set forth plausible claims."  *Khalik*, 671 F.3d at 1193.  "A claim has facial plausibility when the [pleaded] factual content . . . allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  Because Mr. Cook filed his complaint pro se, we construe his pleadings liberally.  *See Bear v. Patton*, 451 F.3d 639, 641 (10th Cir. 2006).

- 23 -

### A. Alleged Violation of Mr. Cook's Constitutional Rights

Mr. Cook contends that he alleged sufficient facts to state one or more claims for violation of his constitutional rights. He asserts that the defendants' actions deprived him of his right of access to the courts, his right to due process, and his rights under the First and Fourteenth Amendments. *See* Aplt. Opening Br. at 7. Seeking a remedy for these alleged violations, he claims to have stated claims for relief under 42 U.S.C. §§ 1983 and 1986. *See* Aplt. Opening Br. at 3, 10.

"To state a claim under § 1983, a plaintiff must allege the violation of a right secured by the Constitution and laws of the United States, and must show that the alleged deprivation was committed by a person acting under color of state law." *West v. Atkins*, 487 U.S. 42, 48 (1988). With the exception of Judge Baca, the defendants Mr. Cook has sued are all private parties. "Private persons may be said to act under color of state law if they are jointly engaged with state officials in the challenged action. But private conduct that is not fairly attributable to the State is simply not actionable under § 1983, however discriminatory or wrongful the conduct is." *Hall v. Witteman*, 584 F.3d 859, 864 (10th Cir. 2009) (internal quotation marks and citations omitted).

Mr. Cook's allegations of state action rest on an alleged conspiracy or at least substantial cooperation between Judge Baca and the other defendants. But "[w]hen a plaintiff in a § 1983 action attempts to assert the necessary 'state action' by implicating state officials or judges in a conspiracy with private defendants, mere

conclusory allegations with no supporting factual averments are insufficient; the pleadings must specifically present facts tending to show agreement and concerted action." *Hunt v. Bennett*, 17 F.3d 1263, 1268 (10th Cir. 1994) (internal quotation marks omitted). "In fact, [this] standard is even stricter where the state officials allegedly involved in the conspiracy are immune from suit, as are the state court judges." *Id.* Having reviewed the FAC, we conclude that its conclusory allegations of a conspiracy fail to demonstrate agreement and concerted action between Judge Baca and the other defendants to deprive Mr. Cook of his constitutional rights. We therefore affirm the dismissal of this claim.

Mr. Cook also asserts a claim for "failure to protect" under 42 U.S.C. § 1986. In order to establish a § 1986 claim, a plaintiff must demonstrate that he was the subject of a conspiracy under 42 U.S.C. § 1985 from which the defendants failed to protect him. *See Taylor v. Nichols*, 558 F.2d 561, 568 (10th Cir. 1977). Mr. Cook asserts that the FAC pleads a violation of § 1985(3). But § 1985(3) only reaches conspiracies "motivated by some racial, or perhaps otherwise class-based, invidiously discriminatory animus." *Tilton v. Richardson*, 6 F.3d 683, 686 (10th Cir. 1993) (internal quotation marks omitted).

Although Mr. Cook has abandoned his allegations of a race-based conspiracy, he asserts that Judge Baca and the other defendants conspired to violate his "class-based" rights as a pro-se debtor in bankruptcy. But these allegations fall short of stating a claim under either § 1985 or § 1986. *See, e.g.*, *United Bhd. of Carpenters*

- 25 -

*& Joiners of Am. v. Scott*, 463 U.S. 825, 837 (1983) (stating § 1985(3) was not intended "to reach conspiracies motivated by bias towards others on account of their economic views, status, or activities."). The district court therefore properly dismissed his § 1986 claim (along with any corresponding § 1985 claim the FAC might be construed to raise).

### B. Alleged Violation of SEC Rule 10b-5

Count VII of the FAC includes various securities-related claims, including an alleged violation of SEC Rule 10b-5. We note that Mr. Cook plainly lacks standing to make some of his assertions connected with this claim, for example when he claims that "[t]he Cooks, CBM, Group and its subsidiaries, HCAN, *the estate and all creditors of the estate*, all interests represented by Plaintiff [sic], suffered substantial damages by [the defendants'] false allegations of interest in certified securities made by [Wells Fargo] and by Scott Garrett in state court proceedings." R., Vol. 1 at 233 (¶ 420) (emphasis added).

To the extent Mr. Cook asserts rights belonging to himself alone, and not part of his bankruptcy estate, the district court properly dismissed his claims. The district court concluded that the FAC failed to state a claim for violation of Rule 10b-5, because it failed to allege that the defendants had made any fraudulent statement or misrepresentations in connection with the sale of a security. In order to state a claim for private securities fraud under Rule 10b-5, a plaintiff must allege:

> (1) the defendant made an untrue or misleading statement of material fact, or failed to state a material fact necessary to make statements not

misleading; (2) *the statement complained of was made in connection with the purchase or sale of securities*; (3) the defendant acted with scienter, that is, with intent to defraud or recklessness; (4) the plaintiff relied on the misleading statements; and (5) the plaintiff suffered damages as a result of his reliance.

*In re Level 3 Commc'ns, Inc. Sec. Litig.*, 667 F.3d 1331, 1333 (10th Cir. 2012) (emphasis added) (internal quotation marks omitted).

Mr. Cook argues that the FAC met this "purchase or sale" pleading requirement because it contained allegations that misrepresentations by Wells Fargo and Garrett et al. interfered with CBM's merger into Galtech as a public entity. *See* Aplt. Opening Br. at 11. We will assume that a defendant's alleged misstatement that interfered with a prospective merger potentially involving a transfer of shares was "made in connection with the purchase or sale of securities." *Level 3*, 667 F.3d at 1333. *See, e.g.*, *Realmonte v. Reeves*, 169 F.3d 1280, 1285 (10th Cir. 1999) ("When an exchange of shares facilitates the merger of two separate and distinct corporate entities, that exchange constitutes a 'purchase or sale' for purposes of bringing a Rule 10b-5 action."). If this assumption is correct, we cannot affirm on the basis relied upon by the district court.

We detect another fatal deficiency in the FAC's Rule 10b-5 claim, however. Nowhere in this claim does the FAC assert that *the plaintiff, Mr. Cook*, relied on any of the allegedly misleading statements in connection with a sale or purchase of a security, or that he "suffered damages as a result of his reliance." *Level 3*, 667 F.3d at 1333. Instead, it alleges that *others*, including members of the public, relied on the

alleged misstatements, thus affecting Mr. Cook's interests.  For this reason, the FAC

fails to plead the necessary reliance elements of a 10b-5 claim, and the district court

therefore properly dismissed the claim.

### C.  Leave to Amend Complaint

Mr. Cook raises two issues concerning his attempts to file an amended

complaint after the district court dismissed the FAC.  First, he challenges the district

court's denial of his general request for leave to amend contained in his motion to

re-open and for reconsideration.  Second, he challenges the district court's failure to

grant his motion for leave to file his proposed second amended complaint.  In our

view, these two challenges collapse into one:  whether the district court should have

granted his motion for leave to amend to file the 87-page second amended complaint.

In other words, Mr. Cook's motion for leave to amend, accompanied by a specific

filing of a proposed amended complaint, superseded his earlier, general request that

he be granted leave to amend.[9]

We ordinarily review the denial of leave to amend for abuse of discretion, but

"[w]hen denial is based on a determination that amendment would be futile, our

review for abuse of discretion includes de novo review of the legal basis for the

---

[9]     The district court concluded that the motion for leave to amend was moot
because it had previously denied Mr. Cook's motion to re-open the case.  *See* R.,
Vol. 2 at 778.  It nevertheless addressed the claims in the proposed second amended
complaint.  *See id.*  Mr. Cook's motion for leave to amend could be viewed as
implicitly requesting that the case be reopened in order for the amended complaint to
be filed.  We therefore detect no jurisdictional problem arising from mootness here.

finding of futility." *Hertz v. Luzenac Grp.*, 576 F.3d 1103, 1117 (10th Cir. 2009) (internal quotation marks omitted). Here, the district court patiently and thoroughly examined each of the allegations of Mr. Cook's proposed second amended complaint, and determined that if filed, they would be subject to dismissal. R., Vol. 2 at 774-84. We agree, and affirm the order of the district court denying leave to amend the FAC.

### D. Alleged Denial of Access to Courts

Finally, Mr. Cook contends that the district court denied him his First Amendment right to access to the courts, along with his Fourteenth Amendment right to equal treatment and due process. He primarily complains about actions of the state courts and makes only conclusory allegations of violations of his rights by the district court. His allegations are meritless.

### CONCLUSION

The judgment and challenged orders of the district court are affirmed with the exception of those portions of the order dismissing Mr. Cook's First Amended Complaint that should have been entered without prejudice. We remand in part for further proceedings consistent with this order and judgment modifying those portions of the dismissal order to a dismissal without prejudice. Mr. Cook's amended motion for sanctions is denied.

Entered for the Court


David M. Ebel
Circuit Judge

- 29 -